UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,            Case No. 13-11743 t7

       Debtor.

TAMMY SPRAGUE, personal representative
of the estate of FRED DALE VAN WINKLE,

       Plaintiff,

v.                                                                 Adv. No. 15-01047 t

JOHN WILLIAMS,
ELLEN B. WILLIAMS, and
BELLEVIEW VALLEY LAND CO., INC.,

       Defendants.

## OPINION

       This matter is on remand from the Tenth Circuit Bankruptcy Appellate Panel (the "BAP"). The BAP reversed this Court's ruling that, under New Mexico law, real property redeemed after entry of a chapter 7 bankruptcy discharge is not encumbered by a pre-discharge judgment lien. The BAP, citing two New Mexico Supreme Court cases,[1] held that a pre-discharge judgment lien re-attaches to property redeemed post-discharge, so foreclosure of that lien does not violate the discharge injunction.

       The Court also held that Defendants violated the January 27, 2015, Stipulated Order Resolving Motion to Avoid Judicial Lien of Belleview Land Co., John Williams and Ellen B. Williams, entered January 27, 2015, doc. 59 (the "Stipulated Order"). The BAP affirmed this

---

[1] *Construction Engineering and Manufacturing Co., v. Don Adams Mining Co., Inc.,* 91 N.M. 238 (1977), and *J.T. Turner v. Les File Drywall*, 117 N.M. 7 (1994).

holding. Because the Court focused on the discharge injunction violation when calculating damages, however, rather than the Stipulated Order violation, the BAP remanded the proceeding so the Court could make specific findings about any damages from the latter violation.[2]

A.  Contempt of Court.

Bankruptcy courts have authority to sanction contumacious violations of court orders. *See, e.g., Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir. 1990) (§ 105(a) gives bankruptcy courts civil contempt power);[3] *In re Armstrong*, 304 B.R. 432, 438 (10th Cir. BAP 2004) (bankruptcy courts have statutory authority under § 105 to issue civil contempt orders); *Gonzales v. Potter (In re Potter)*, 2008 WL 1777843, at *2 (Bankr. D.N.M.) ("[t]his Court has the power to enter sanctions for civil contempt based on an attorney or party's violation of a prior court order"); *In re Scrivner*, 535 F.3d 1258, 1263 (10th Cir. 2008) (11 U.S.C. § 105 "grants bankruptcy courts the power to sanction conduct abusive of the judicial process"). Bankruptcy courts also have the inherent authority "to maintain order and confine improper

---

[2] The Court is loath to criticize the BAP's opinion, which in general is excellent, but in the Court's view the BAP mis-read *Construction Engineering* and *Turner*. These cases hold that property acquired by redemption can become subject to a judgment lien, just like other property owned or acquired by a judgment debtor. In *Construction Engineering*, the Supreme Court denied the mortgagee's request to "revive" its mortgage "upon redemption by the mortgagor." However, the court pointed out that the mortgagee's deficiency judgment became a judgment lien encumbering all the debtor's property, including the redeemed property at issue. 91 N.M. at 240. *Turner* cited *Construction Engineering* when deciding whether a judgment lien encumbered property redeemed by the debtor's assignee. The court held that it did not. 117 N.M. at 8. The BAP read *Construction Engineering* and *Turner* as holding that redeemed property reverts to its pre-foreclosure encumbered status, and/or that the foreclosed lien is resurrected by redemption. 583 B.R. at 768-70. The cases do not so hold. As the BAP's ruling impairs a New Mexico debtor's fresh start, the Court hopes the issue will be revisited when feasible.

[3] Section 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

behavior in [their] own proceedings." *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994). Bankruptcy courts "may also possess 'inherent power . . . to sanction 'abusive litigation practices.'" *Law v. Siegel*, 571 U.S. 415 (2014), quoting *Marrama v. Citizens Bank of Mass*, 549 U.S. 375-376, (2007). *See also In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009) ("Bankruptcy courts generally have the power to sanction attorneys pursuant to (1) their civil contempt authority under 11 U.S.C. § 105(a); and (2) their inherent sanction authority").[4]

Civil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience to a court order; (2) to compensate the parties for losses resulting from the contemnor's non-compliance with a court order. *United States v. United States Mine Workers of America,* 330 U.S. 258, 303-04 (1947). Where compensation is intended, the fine must be based on evidence of complainant's actual loss. *Id.* at 304.

To be held in contempt, a party, having notice of a specific and definite court order, must have violated the order. *In re Lucre Mgmt. Group, LLC*, 365 F.3d 874, 875 (10th Cir. 2004), citing *In re Nielsen*, 53 F.3d 342 (unpublished) (10th Cir. 1995).

B.   Defendants' Arguments Against any Damage Award.

Defendants argue that no damages can be awarded for their violation of the Stipulated Order. First, Defendants rely on the following statement allegedly made by the Court on June 1, 2017, at the end of the trial on damages:

> In the Lincoln County case, it's kind of easier in the sense that nobody's done anything, and that's why it's very hard for me to see that there can be any contempt at all. Mr. Arvizu just assumes somebody's going to go do something wrong. I hate to assume, especially when I'm talking citing somebody for contempt, that

---

[4] It is an open question whether bankruptcy courts have criminal contempt authority. *Skinner*, 917 F.2d at 447, n. 2. ("we express no opinion at to whether bankruptcy courts have authority to enter sanctions for criminal contempt.").

-3-

> somebody is going to go do something wrong, especially when the basis of that is the estate was going to go pay Mr. Williams $40,000 that they've never paid him. So I find that, indeed, very difficult to use that as a premise to establish that something wrong was going to happen here.
>
> We just have no way of knowing if Mr. Williams would have done anything wrong, and I can't imagine why he would have, because this was a stipulated order to begin with. I mean, quite frankly, it just kind of boggles my imagination.

Defendants' Brief Opposing Award of Attorney Fees, filed June 27, 2018, doc. 141.[5]

This rambling statement, which Defendants attribute to the Court, was made by Defendants' counsel in closing argument. Giving Defendants the benefit of the doubt,[6] the Court does not find that Defendants were trying to perpetrate a fraud. Nevertheless, Defendants' first argument against an award of damages is based on an obvious error.

The BAP remanded the proceeding "for the calculation of actual and punitive damages resulting only from Appellants' contempt of the Stipulated Order."[7] Despite this instruction on remand, Defendants argue that the "law of the case" doctrine prevents an award. This weak argument fails. In its original opinion, the Court awarded $50,000 in damages for violation of the discharge injunction. The Court then held that it would not "assess additional damages" for violation of the Stipulated Order "because they would be cumulative." *In re Van Winkle*, 2017 WL 2729069, at *7 (Bankr. D.N.M.). The final judgment entered with the opinion merely gives a money judgment of $50,000, with no mention of the discharge injunction or the Stipulated Order. Neither this Court nor the BAP has ever ruled that Plaintiff is not entitled to damages for Defendants' violation of the Stipulated Order. Defendants are attempting to take this Court's effort

---

[5] The quote was taken from Appellants' Appendix Vol. VI, doc. 123, p. 156, the relevant page of which was attached to the brief.

[6] The trial transcript, doc. 123, attributes the statement to the Court. The audio recording, however, makes clear that the speaker was Defendants' counsel.

[7] 583 B.R. at 773.

not to "double up" on damages and twist it into a ruling that no damages are awardable. The attempt lacks merit and good faith.

Similarly, Defendants argue that *res judicata* prevents an award of damages for violation of the Stipulated Order. This argument fails for the same reasons as Defendants' "law of the case" argument. No court has ever ruled that Plaintiff is not entitled to damages for Defendants' violation of the Stipulated Order.

C.  Compensatory Damages.

1.  Attorney Fees. Civil contempt monetary sanctions often include attorneys' fees and costs. *In re Peyrano*, 2017 WL 2731299, at *6 (10th Cir. BAP) (unpublished). "It is clearly valid to award attorney's fees and costs for preparing and prosecuting a contempt petition." *In re Establishment Inspection of Microcosm*, 951 F.2d 121, 126 (7th Cir. 1991), citing *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 748 (7th Cir. 1976); *Eastman v. Baker Recovery Servs. In re Eastman*, 2010 WL 5462469, at *2 (Bankr. W.D. Tex.) (approving award of attorney fees in a contempt of court proceeding when the only damage is attorney fees); *In re Cherry*, 247 B.R. 176, 189 (Bankr. E.D. Va. 2000) (attorney fees necessarily incurred to enforce the injunction are a species of actual damages suffered because of defendant's violation of the discharge injunction). *See generally* 4 Collier on Bankruptcy ¶ 524.02[2][c] (16th ed.) (attorney fees typically awarded for violations of the discharge injunction).

Awardable attorney fees include those incurred defending a sanction award on appeal. *See, e.g., In re Culley,* 347 B.R. 115, at *6 (10th Cir. BAP 2006) (implies that attorney fees awardable by the bankruptcy court for contempt can include fees for appellate work); *Eresian v. Mantalvanos*, 2015 WL 1061550, at *1 (D. Mass.) (awarded attorney fees incurred defending a bankruptcy appeal); *Mitrano v. Warshell*, 150 Fed. App'x 277, 280 (4th Cir. 2005) (same); *In re Hoti*

-5-

Case 15-01047-t    Doc 145    Filed 02/22/19    Entered 02/22/19 11:40:34 Page 5 of 10

*Enterprises, L.P.*, 2013 WL 1812197, at *9, 20 (S.D.N.Y.) (affirmed bankruptcy court contempt order that awarded attorney fees incurred in appellate court proceedings).

Here, the evidence is that Plaintiff incurred the following attorney fees in connection with Defendants' violation of the Stipulated Order:

    a.    <u>Kyle Moberly fees</u>. Mr. Moberly is Plaintiff's state court counsel. His first time entry was on January 21, 2015. The Court reviewed his time entries after the Lincoln County complaint was filed (May 19, 2015). From that date forward, the Court found 19 entries (totaling 4.6 hours) that related to the Lincoln County foreclosure action or this adversary proceeding.[8] There was also a filing fee for appearing in the Lincoln County foreclosure action ($6.00). The Court finds that the total of fees, costs, and gross receipts tax charged by Mr. Moberly for work done in connection with Defendants' violation of the Stipulated Order is $1,002.97. The Court finds that Mr. Moberly's hourly rate ($200) is reasonable and that the amount of time charged is reasonable.

    b.    <u>Trey Arvizu fees</u>.

        i.    <u>Bankruptcy court</u>. Mr. Arvizu started working on this matter on May 19, 2015. From that date until June 23, 2017, Mr. Arvizu billed Plaintiff for 114 hours of his time, at $225 an hour. Including a filing fee ($260) and gross receipts tax ($1,965.53), the total bill was $27,875.53. Mr. Arvizu had to deal with the following issues raised by Defendants during that time, all of which relate to the violation of the Stipulated Order:

- preparing orders staying the state court action;
- motion to extend time to answer;
- a motion to dismiss for lack of jurisdiction;
- a motion to extend time to reply;

---

[8] The entries were for time billed on 5/19, 5/20, 5/21, 5/22, 6/22, 6/23, 6/24, 6/30, 7/1, 8/4, 8/5, 8/7, 8/24, and 8/28 (all in 2015), 1/15, 5/17, 6/15, and 6/28 (all in 2016), and 2/13/17.

- a motion to reconsider the order denying the motion to dismiss for lack of jurisdiction;
- a motion to set aside the stipulated order regarding stay;
- a motion to compel;
- a motion to authorize petition for certification to the New Mexico Supreme Court;
- a motion for writ of mandamus;
- a motion to modify pre-trial order; and
- a second motion to compel.

The Court has carefully reviewed Mr. Arvizu's bills and concludes that 75% of the time he spent in this matter would have been spent if the only issue had been Defendants' violation of the Stipulated Order. Thus, of Mr. Arvizu's total bill of $27,875.53, the Court will award Plaintiff $20,906.65.

        ii.        <u>BAP appeal</u>. Defending the appeal, Mr. Arvizu charged $14,590.78 in fees and tax.[9] The Court has reviewed the time entries for the appeal and finds that 75% of the time Mr. Arvizu spent would have had been required if the only issue had been violation of the Stipulated Order. The Court therefore will award Plaintiff $10,943.09 in fees and tax incurred on the appeal.

    b.    <u>Personal Representative</u>. In its prior opinion, the Court ruled that reasonable time spent by Plaintiff as personal representative of the Van Winkle estate was compensable at $25 per hour. *Sprague v. Williams (In re Van Winkle)*, 2017 WL 2729069, at *5-6 (Bankr. D.N.M.). The Court has reviewed Plaintiff's time entries from July 10, 2014, through May 2, 2018. The Court finds that 47 of the entries deal with the violation of the Stipulated Order.[10] These entries total 55.55 hours. At $25 per hour, the personal representative fees total $1,388.75.

---

[9] The bill he submitted on June 8, 2018 included 5.1 hours charged before the appeal was filed. The Court added these hours to the bankruptcy court portion, discussed above, and deducted them from the appeal portion.

[10] The Court did not include Plaintiff's travel time and expense for her trip to Denver for the BAP oral argument. It does not seem to the Court that the personal representative's presence was required at the argument.

c. <u>Total</u>. The Court will award total compensatory damages of:

| Person | Compensatory award |
|---|---|
| Kyle Moberly | $ 1,002.97 |
| Trey Arvizu | $31,849.74 |
| Personal Representative | $ 1,388.75 |
| Total | <u>$34,241.46</u> |

C. <u>Punitive Damages</u>.

Bankruptcy courts often award punitive damages as a noncompensatory sanction for contumacious behavior. *See, e.g., In re Culley*, 347 B.R. 115, at 7 (affirming bankruptcy court's award of punitive damages several time higher than actual damages, for violation of the discharge injunction);[11] *In re Ridley*, 572 B.R. 352 (Bankr. E.D. Okla. 2017) (awarding $12,000 in punitive damages for violation of the discharge injunction); *Franklin Credit Management Corp. v. Cook (In re Cook)*, 551 B.R. 613 (M.D. Tenn. 2016) (affirming bankruptcy court's $5,000 punitive damages sanction for repeated violation of court orders); *In re Cherry*, 247 B.R. 176, 189 (Bankr. E.D. Va. 2000) ("A majority of courts allow punitive damages for violation of the discharge injunction"); *In re Workman*, 392 B.R. 189, 196-97 (Bankr. D.S.C. 2007) ("punitive damages for violating orders of the Court may be appropriate under 11 U.S.C. § 105"); *In re Evans*, 289 B.R. 813, 827 (Bankr. E.D. Va. 2002) (punitive damages are appropriate to vindicate the orders of the court); *In re Adams*, 2010 WL 2721205, at *6 (Bankr. E.D.N.C.) (creditor's "intentional, unfounded, prolonged violation of the discharge injunction and this court's order warrants punitive sanctions"). Here, the BAP has indicated that punitive damages may be appropriate.[12]

As stated in *In re Culley*:

---

[11] "Civil contempt is the normal sanction for violation of the discharge injunction." 4 Collier on Bankruptcy ¶ 524.02[2][c], n. 54 and accompanying text (16th ed.).

[12] "[W]e do not suggest-by noting the bankruptcy court did not indicate how the punitive damage award was arrived at-that the bankruptcy court's decision to award punitive damages was in error." 583 B.R. at 773.

-8-

Case 15-01047-t    Doc 145    Filed 02/22/19    Entered 02/22/19 11:40:34 Page 8 of 10

> [C]ourts in the Tenth Circuit employ two different tests to determine if punitive damages are appropriate. If the violation is willful or in reckless disregard of the law, punitive damages are proper. A creditor may be assessed punitive damages if it knew of the federally protected right and acted intentionally or with reckless disregard of that right. A second, slightly different test considers (i) the defendant's conduct, (ii) the defendant's ability to pay, (iii) the motives for the defendant's actions, and (iv) any provocation by the debtor.

347 B.R. 115, at *4 (citing *Diviney v. Nationsbank of Texas (In re Diviney),* 225 B.R. 762, 766-77 (10th Cir. BAP 1998). The Court concludes that under either test, an award of punitive damages is appropriate. Defendants knew about the Stipulated Order because they agreed to it. Defendants' state court counsel approved the Stipulated Order on January 22, 2015. Four months later he filed the Lincoln County complaint that essentially ignored the Stipulated Order. When Plaintiff sued Defendants in this Court for violating the Stipulated Order, Defendants denied any violation. The problem should have been fixed as soon as Plaintiff called Defendants' attention to it. Instead, Defendants stubbornly forced Plaintiff to file this adversary proceeding; moved to dismiss it on jurisdictional grounds; opposed summary judgment on liability; opposed any award of damages; filed a mandamus action; and appealed the Court's ruling that they had violated the Stipulated Order. None of that was reasonable or necessary, as the violation was clear, unnecessary, and easy to fix.

The Court finds that Defendants' violation of the Stipulated Order was willful. The Court also finds that Defendants' conduct with respect to the Stipulated Order has been sufficiently willful and stubborn to warrant punitive damages;[13] that they can pay some amount of punitive

---

[13] The actions that concern the Court are not only the willful violation of the Stipulated Order but also the litigation tactics that have for so long concerned the Court, and that also concerned the BAP. *See, e.g.,* 583 B.R. at 773.

damages;[14] that the motivation for their actions was improper;[15] and that Plaintiff did not provoke Defendants into taking the actions at issue.

The Court finds that a punitive damage sanction of $5,000 is reasonable and mild given the circumstances of this case. It represents about 14.6% of the compensatory damage award. Such an award is within this Court's power to impose. The Court hopes a $5,000 sanction will convince Defendants to comply with court orders.

### III. CONCLUSION

Defendants willfully violated the Stipulated Order four months after they agreed to it, then stubbornly refused to fix their violation when it was called to their attention. Instead, they forced Plaintiff to file this action, respond many frivolous arguments and motions, and spend too much in attorney fees. The Court will award compensatory damages of $34,241.46. To this amount the Court will add a $5,000 punitive sanction. The Court will enter a separate judgment.

_____
David T. Thuma
United States Bankruptcy Judge

Entered: February 22, 2019

Copies to: counsel of record

---

[14] Defendants have been able to pay substantial attorney fees to their state court and bankruptcy court counsel. They also will be able to re-sell the redeemed Otero County property, which apparently is worth at least $73,200.

[15] The Court finds that Defendants' motivation was to aggressively collect the amounts owed by the Van Winkle estate, with no thought to the Stipulated Order. When their violation of the order was called to their attention, Defendants turned to "scorched earth" litigation to avoid compliance.

-10-